UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | | |
|---|---|---|
| THE TRUSTEES OF PURDUE UNIVERSITY, | ) ) ) | |
| *Plaintiff* | ) ) | Cause No. 4:20-cv-76-RLM-APR |
| v. | ) ) ) | |
| VINTAGE BRAND, LLC, | ) ) ) | |
| *Defendant* | ) | |

OPINION AND ORDER

The Trustees of Purdue University sued defendants Vintage Brand, LLC, and Sportswear Inc. in Indiana state court for various violations of the Lanham Act and related common-law claims. The defendants removed the case to this court asserting federal question and supplemental jurisdiction. Purdue then stipulated to the voluntary dismissal of Sportswear, but the court struck that stipulation and instructed Purdue to instead amend its complaint under Federal Rule of Civil Procedure 15(a), naming Vintage as the only defendant. Purdue did so and Vintage answered, asserting a counterclaim. Before the court is Purdue's motion to remand, or alternatively, dismiss Vintage's counterclaim. For the following reasons, the court GRANTS Purdue's motion [Doc. No. 32] and DISMISSES Vintage's counterclaim.

I. BACKGROUND

Purdue's amended complaint asserts that Vintage has infringed on several of Purdue's registered trademarks, including the Purdue Seal Design that is the subject of United States Trademark Registration No. 2,023,0151. Vintage's counterclaim seeks to abolish Purdue's rights in the Seal Design by asking the court to cancel Purdue's trademark in the Seal Design pursuant to 15 U.S.C. § 1119. Upon "any action involving a registered mark[,]" Section 1119 empowers a court to (among other things) "order the cancellation of registrations, in whole or in part, . . . and otherwise rectify the [trademark] register with respect to the registrations of any party to the action." Section 1119 doesn't furnish an independent basis for federal jurisdiction; trademark cancellation can only be sought if federal jurisdiction has already been established. RLP Ventures, LLC v. All Hands Instruction NFP, 2020 WL 1330376, at *5 (N.D. Ill. Mar. 23, 2020).

Purdue responds that the Eleventh Amendment to the U.S. Constitution doesn't allow Vintage to bring its counterclaim in federal court, so the court should remand the entire case or dismiss the counterclaim.

II. DISCUSSION

Aside from exceptions that don't apply here, a civil action brought in state court may be removed to federal court if the federal court has original jurisdiction over the action. 28 U.S.C. § 1441(a). District courts have original jurisdiction over cases involving federal questions. 28 U.S.C. § 1331. When district courts have federal question jurisdiction, they also have supplemental jurisdiction over

2

all other claims that arise out of the same case or controversy as the claims that establish federal question jurisdiction. 28 U.S.C. 1367(a). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "The party seeking removal has the burden of establishing federal jurisdiction, and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." Schur v. L.A. Weight Loss Centers, Inc., 577 F.3d 752, 758 (7th Cir. 2009).

The Eleventh Amendment to the U.S. Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI. "Courts have construed this provision broadly, holding that it confers 'the sovereign immunity that the States possessed before entering the Union.'" Council 31 of the Am. Fed'n of State, Cnty. & Mun. Emps. V. Quinn, 680 F.3d 875, 881 (7th Cir. 2012) (quoting Bd. of Regents v. Phoenix Int'l Software, Inc., 653 F.3d 448, 457 (7th Cir. 2011). "The preeminent purpose of state sovereign immunity is to accord States the dignity that is consistent with their status as sovereign entities." Federal Maritime Comm'n v. South Carolina State Ports Auth., 535 U.S. 743, 760 (2002). "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." Kimel v. Florida Bd. of Regents, 528 U.S. 62, 73 (2000). Purdue University is a state entity for Eleventh Amendment purposes,

Kashani v. Purdue Univ., 813 F.2d 843, 845 (7th Cir. 1987), and courts draw no distinction between Purdue University and its Board of Trustees, *e.g.*, Tyler v. Trustees of Purdue Univ., 834 F. Supp. 2d 830, 845 (N.D. Ind. 2011).

Vintage argues that Purdue can't assert Eleventh Amendment immunity because (1) cancellation of a federal trademark registration is an *in rem* proceeding that doesn't implicate sovereign immunity, and (2) even if Purdue had sovereign immunity, they waived it by initiating this lawsuit. Each of these arguments are discussed below.

A.  Cancellation of a Federal Trademark isn't an *In Rem* Proceeding.

Vintage argues that *in rem* jurisdiction is premised solely on the property in dispute, not on the court's authority over a defendant's person (i.e., *in personam* jurisdiction). Moreover, *in rem* judgment is also limited to the property in dispute; courts can't impose a personal obligation on the defendant in favor of the plaintiff. Parties may wish to participate in *in rem* proceedings and assert economically valuable rights to the property, but they are never compelled to do so. These features of *in rem* proceedings mean that, apart from a few exceptions that don't apply, *in rem* actions don't implicate Eleventh Amendment immunity. From those basic principles, Vintage argues that asking a court to exercise its authority under Section 1119 to rectify the register regarding the trademark registrations of a party is an *in rem* proceeding—that is, a proceeding regarding the disposition of property. As Vintage sees it, it should be allowed to assert its claim against Purdue because Eleventh Amendment immunity doesn't apply.

4

Vintage is correct that *in rem* proceedings affect the interests of all persons in designated property and don't implicate a court's authority over a defendant's person. Shaffer v. Heitner, 433 U.S. 186, 199 (1977). And the law in this circuit has explicitly recognized three exceptions in which Eleventh Amendment immunity doesn't apply: "First, a state may waive immunity by consenting to suit in federal court. Second, Congress may abrogate the state's immunity through a valid exercise of its powers under recognized constitutional authority, such as by later constitutional amendments. Third, under Ex parte Young, 209 U.S. 123, 159–60, 28 S.Ct. 441, 52 L.Ed. 714 (1908), a plaintiff may file 'suit against state officials seeking prospective equitable relief for ongoing violations of federal law . . . .'" Indiana Protection and Advocacy Services v. Indiana Family and Social Services Admin., 603 F.3d 365, 371 (7th Cir. 2010) (quoting Marie O. v. Edgar, 131 F.3d 610, 615 (7th Cir. 1997)).

None of these scenarios turn on whether the proceeding is *in rem,* but some types of *in rem* proceedings don't implicate Eleventh Amendment immunity either. For example, bankruptcy jurisdiction is "principally *in rem* jurisdiction . . . [because] 'the court's jurisdiction is premised on the debtor and his estate, and not on the creditors.' As such, its exercise does not, in the usual case, interfere with state sovereignty even when States' interests are affected." Central Virginia Community College v. Katz, 546 U.S. 356, 369-378 (2006) (quoting Tennessee Student Assistance Corp. v. Hood, 541 U.S. 440, 447 (2004) (explaining that States agreed at the Constitutional Convention not to assert sovereign immunity in bankruptcy proceedings because "jurisdiction exercised in bankruptcy

5

proceedings was chiefly *in rem*—a narrow jurisdiction that does not implicate state sovereignty to nearly the same degree as other kinds of jurisdiction."); *cf.* California v. Deep Sea Research, Inc., 523 U.S. 491 (1998) (holding that *in rem* admiralty proceedings don't implicate Eleventh Amendment immunity when the property isn't within the possession of a sovereign). But "there is no general in rem exception to principles of sovereign immunity." Zych v. Wrecked Vessel Believed to be the Lady Elgin, 960 F.2d 665, 669 (7th Cir. 1992) (citing United States v. Nordic Village, Inc., 503 U.S. 30 (1992)); *see also* In re New York (I), 256 U.S. 490 (1921); In re New York (II) 256 U.S. 503 (1921); *cf.* Upper Skagit Indian Tribe v. Lundgren, 138 S. Ct. 1649, 1652-1653 (2018); Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261 (1997).

Vintage relies heavily on a recently decided Federal Circuit case, Regents of the Univ. of Minnesota v. LSI Corp., 926 F.3d 1327 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 908 (2020), in arguing that an action under Section 1119 isn't only an *in rem* proceeding, but an *in rem* proceeding of the sort to which Eleventh Amendment immunity doesn't apply. In that case, the University of Minnesota sued defendants LSI and Ericsson in federal district court alleging patent infringement, and the defendants responded by separately petitioning the USPTO for inter partes review ("IPR") seeking a determination of unpatentability of the challenged claims. Id. at 1330. The University moved to dismiss in each IPR proceeding based on state sovereign immunity, but the Patent Trial and Appeal Board ("the Board") concluded that "state sovereign immunity applied to IPR proceedings but that [the University] waived its immunity by filing suit

6

against petitioners in district court." Id. A concurrence to each of the Board decisions concluded that sovereign immunity was not implicated in part because "[a]t its core, inter partes review is a circumscribed in rem proceeding, in which the Patent Office exercises jurisdiction over the patent challenged, rather than the parties named; 'it does not implicate States' sovereignty to nearly the same degree as other kinds of jurisdiction.'" LSI Corp. v. Regents of the Univ. of Minn., No. IPR2017-01068, Paper 1 (P.T.A.B. Mar. 10, 2017) (quoting Cent. Va. Cmty. Coll. v. Katz, 546 U.S. 356, 362 (2006)).

The Federal Circuit affirmed the Board's holding on appeal. Citing Fed. Mar. Comm'n v. S.C. State Ports Auth., 535 U.S. 743, 767-768 (2002), for the proposition that "sovereign immunity does not apply to suits brought by the United States, including agency proceedings commenced by the United States[,]" the Federal Circuit concluded that "IPR proceedings are more like an agency enforcement action than a civil suit brought by a private party" and therefore held that state sovereign immunity didn't apply to IPR proceedings. Id. at 1338, 1341; Saint Regis Mohawk Tribe v. Mylan Pharmaceuticals Inc., 896 F.3d 1322 (Fed. Cir. 2018), *cert. denied*, 139 S. Ct. 1547 (2019). *But cf.* Federal Maritime Comm'n v. South Carolina State Ports Auth., 535 U.S. 743 (2002) (holding that state sovereign immunity extends to administrative proceedings initiated by private parties).

In the "additional views" portion of the opinion, the court stated in dicta: "in our view state sovereign immunity also does not apply to IPR proceedings because they are in substance the type of in rem proceedings to which state

7

sovereign immunity does not apply." Id. at 1342. The court reasoned that "[p]atents are creations of federal statutory law and are regulated by that law, which includes the ability of the executive to consider whether a previous grant was erroneous." Id. at 1344 (citations omitted). To obtain jurisdiction over a patent or resolve issues of its validity, "the Board does not physically intrude into the state's domain," and IPR proceedings are "not premised on obtaining jurisdiction over a state or its officers. The Board's jurisdiction is premised on the res (i.e., the patent)." Id. at 1344-1345. "[T]he only relief the Board can offer is the revocation of erroneously granted patent claims. . . . No monetary or other relief against the patent owner is authorized or provided." Id. at 1345. And the Board doesn't "make any binding determination regarding the liability of one party to another[,]" underscoring the lack of *in personam* jurisdiction. Id. Therefore the Board's "second look at an earlier administrative grant . . . doesn't constitute an affront to a state's sovereignty, particularly where the only possible adverse outcome is the cancellation of erroneously granted claims." Id. at 1346. The court determined that Eleventh Amendment immunity doesn't apply to the Board's review of a patent because their review is "an in rem proceeding [that is no] more threatening to state sovereignty than the exercise of an Article III court's bankruptcy in rem jurisdiction." Id.

Vintage argues that the Federal Circuit's reasoning (in dicta) in University of Minnesota v. LSI relating to patent registrations is germane to a claim for cancellation of a federal trademark registration because the court's authority under Section 1119 doesn't extend to allocating liability against a party—it only

8

extends to determining the validity and scope of the res (the trademark registration) at issue. Ostensibly, Vintage's argument is that claims under Section 1119 are analogous to IPR proceedings, and since IPR proceedings are no more of an affront to state sovereignty than *in rem* bankruptcy proceedings, Section 1119 actions aren't an affront to state sovereignty either. So Eleventh Amendment immunity shouldn't apply.

Salient details differentiate University of Minnesota v. LSI from this case. Most obviously, University of Minnesota v. LSI wasn't a trademark case. Delaware & Hudson Canal Co. v. Clark, 80 U.S. 311, 322 (1871) ("Property in a trade-mark, or rather in the use of a trade-mark or name, has very little analogy to that which exists in copyrights, or in patents for inventions."). But also, University of Minnesota v. LSI considered the applicability of Eleventh Amendment immunity only in the context of IPR proceedings—not a counterclaim brought as part of an adversarial proceeding in federal court. *See* Nelson v. La Crosse Cty. Dist. Atty. (State of Wisconsin), 301 F.3d 820, 837 (7th Cir. 2002); Saint Regis Mohawk Tribe v. Mylan Pharmaceuticals Inc., 896 F.3d at 1327 (2018) ("Ultimately several factors convince us that IPR is more like an agency enforcement action than a civil suit brought by a private party, and we conclude that tribal immunity is not implicated."). Nevertheless, there are other reasons to reject Vintage's argument—namely, circuit precedent.

The law in this circuit is that "[a] trademark, even a registered one, is not a property right, like a copyright or a patent, but merely an identifier of source." Door Systems, Inc. v. Pro-Line Door Systems, Inc., 83 F.3d 169, 173 (7th Cir.

9

1996); *accord* TMT North America, Inc. v. Magic Touch GmbH, 124 F.3d 876, 882 (7th Cir. 1997); Illinois High School Ass'n v. GTE Vantage Inc., 99 F.3d 244, 246 (7th Cir. 1996) ("[A] trademark is not nearly so secure an entitlement as a property right."); K's Merchandise Mart, Inc. v. Kmart Corp., 81 F. Supp. 2d 923, 926 (C.D. Ill. 2000); Elder Care Providers of Indiana, Inc. v. Home Instead, Inc., 2017 WL 1106093, at *14 (S.D. Ind. Mar. 24, 2017); Note Family, Inc. v. Vivendi Universal Games, Inc., 2007 WL 2565970, at *5 (S.D. Ill. Sept. 4, 2007). This is because "[o]thers can use the same mark to identify their product, provided there is no likelihood of confusion." Door Systems, Inc. v. Pro-Line Door Systems, Inc., 83 F.3d at 173. If a trademark isn't a property right, an action to cancel a trademark under Section 1119 can't be an *in rem* proceeding—the court's jurisdiction isn't exclusively confined to the disposition of a piece of property. *See* Schaffer v. Heitner, 433 U.S. at 199.

The court acknowledges the close resemblance that trademark rights bear to property rights. TMT North America, Inc. v. Magic Touch GmbH, 124 F.3d at 882 ("[T]rademark rights are clearly analogous to property interests.") "Trademark law, like contract law, confers private rights, which are themselves rights of exclusion." K Mart Corp. v. Cartier, Inc., 485 U.S. 176, 185 (1988); *accord* College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 673 (1999) ("The hallmark of a protected property interest is the right to exclude others. That is one of the most essential sticks in the bundle of rights that are commonly characterized as property. . . . The Lanham Act may well contain provisions that protect constitutionally cognizable property

10

interests—notably, its provisions dealing with infringement of trademarks, which are the 'property' of the owner because he can exclude others from using them."). "A trademark gives a seller 'a property right in his mark of identification, appurtenant to his property rights in the goods he so marks, enabling the owner of the trademark to enjoin [an] imposter from continuing misrepresentations.'" TMT North America, Inc. v. Magic Touch GmbH, 124 F.3d at 882 (quoting Walt–West Enterprises, Inc. v. Gannett Co., 695 F.2d 1050, 1057 (7th Cir. 1982)); *cf.* Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 413 (1916), *superseded by statute*, Lanham Act, 15 U.S.C. § 1051 et seq. ("Common-law trademarks, and the right to their exclusive use, are, of course, to be classed among property rights . . . but only in the sense that a man's right to the continued enjoyment of his trade reputation and the good will that flows from it, free from unwarranted interference by others, is a property right, for the protection of which a trademark is an instrumentality.").

Nevertheless, the court isn't free to find that a property right exists when the law in this circuit has established that it doesn't. So an action to cancel a trademark under 15 U.S.C. § 1119 isn't an *in rem* proceeding and doesn't, by itself, prevent Purdue from asserting Eleventh Amendment immunity.

11

B. Purdue's Litigation Conduct Didn't Waive Eleventh Amendment Immunity.

Vintage's second argument is that Purdue waived Eleventh Amendment immunity because Purdue voluntarily placed itself in the position of a plaintiff by bringing this lawsuit.

"[S]overeign immunity is a waivable affirmative defense[,]" Sung Park v. Indiana Univ. Sch. Of Dentistry, 692 F.3d 828, 830 (7th Cir. 2012), and only the state can decide to waive sovereign immunity, MCI Telecommunications Corp. v. Illinois Bell Telephone Co., 222F.3d 323, 338 (7th Cir. 2000). "The Eleventh Amendment only applies to suits 'commenced or prosecuted *against* one of the United States.'" In re Platter, 140 F.3d 676, 680 (7th Cir. 1998) (emphasis in original) (quoting U.S. Const. amend. XI). So a state generally waives sovereign immunity if it voluntarily invokes federal jurisdiction by filing suit in federal court. Id. ("[If] a state enter[s] a federal forum voluntarily to pursue its own interest . . . [then] it cannot run back to seek Eleventh Amendment Protection when it does not like the result.").

To bolster its argument, Vintage cites caselaw from other circuits holding that a state suing in state court can't invoke the Eleventh Amendment to prevent a defendant from removing to federal court. In re Methyl Tertiary Butyl Ether Products Liability Litigation, 488 F.3d 112 (2d Cir. 2007); California ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831 (9th Cir. 2004). This is because "where a State voluntarily becomes a party to a cause and submits its rights for judicial determination, it will be bound thereby and cannot escape the result of its own

12

voluntary act by invoking the prohibitions of the Eleventh Amendment." California ex rel. Lockyer v. Dynegy, Inc., 375 F.3d at 848 (quoting Gunter v. Atl. C.L.R. Co., 200 U.S. 273, 284 (1906)). According to Vintage, this means that a State can't invoke an Eleventh Amendment immunity defense to a counterclaim because, like removal, a counterclaim is a consequence attendant to bringing a lawsuit. Put another way, Vintage argues that filing a lawsuit in state court is a litigious act that entirely waives a state's sovereign immunity to any counterclaims that may be brought against it after removal.

Vintage's argument requires the court to decide that (1) a state waives sovereign immunity if it sues in state court, and (2) the waiver includes all counterclaims that might be brought against it after removal.

First, it's highly unlikely that a state waives sovereign immunity simply by suing in state court. Although dicta, the circuit court strongly indicated that it doesn't in Board of Regents of University of Wisconsin System v. Phoenix Intern. Software, Inc., a case in which Wisconsin sued defendants in federal court. 653 F.3d 448 (7th Cir. 2011). The court found that Wisconsin had waived sovereign immunity against compulsory counterclaims by invoking federal jurisdiction but mentioned that "if Wisconsin was concerned about [the defendant's] competing CONDOR trademark and wished to preserve its sovereign immunity, it had the option of filing its own infringement action in Wisconsin state court." Id. at 465; cf. College Sav. Bank v. Florida Prepaid Postsecondary Educ. Bd., 527 U.S. at 675 ("[A] State does not consent to suit in federal court merely by consenting to suit in the courts of its own creation."). Other courts have said that a state

13

doesn't waive sovereign immunity simply by filing suit in state court. Iowa Valley Community College Dist. V. Plastech Exterior Systems, Inc., 256 F. Supp. 2d 959, 965 n.3 (S.D. Iowa 2003). That stands to reason because when a state sues in state court and the defendant removes, the state hasn't done anything to invoke federal jurisdiction.

But even if a state does waive its sovereign immunity by suing in state court, it's dubious that that waiver extends to both permissive and compulsory counterclaims. Vintage cites caselaw from other circuits for the proposition that "when the sovereign seeks recovery[,] it is subject to legitimate counterclaims against it." In re Methyl Tertiary Butyl Ether Products Liability Litigation, 488 F.3d 112, 119 (2d Cir. 2007). The cases Vintage cites consider sovereign immunity as it would apply to a foreign government. In our circuit, "when a state waives its sovereign immunity by litigation conduct, that waiver opens the door to counterclaims regarded as compulsory within the meaning of Federal Rule of Civil Procedure 13(a)." Board of Regents of University of Wisconsin System v. Phoenix Intern. Software, Inc., 653 at 470. Whether this waiver extends more broadly to permissive counterclaims is an unresolved question in this circuit, id., but courts have indicated that it doesn't extend so broadly. Woelffer v. Happy States of America, Inc., 626 F. Supp. 499, 502 (N.D. Ill. 1985) (citing cases); Virginia Polytechnic Inst. and State University v. Hokie Real Estate, Inc., 813 F. Supp. 2d 745, 753 (W.D. Va. 2011) (citing In re Creative Goldsmiths of Washington, D.C., Inc., 119 F.3d 1140, 1148 (4th Cir. 1997) (emphasizing that "well-established principles of sovereign immunity dictate that this waiver be

14

narrowly construed")). *But see* In re Charter Oak Associates, 361 F.3d 760, 768-769 (2d Cir. 2004). *See generally* 6 Arthur R. Miller, Mary Kay Kane, & A. Benjamin Spencer, Federal Practice and Procedure § 1427 (3d ed. 2021).

Federal Rule of Civil Procedure 13 defines compulsory and permissive counterclaims. A compulsory counterclaim is a counterclaim that "arises out of the same transaction or occurrence that is the subject matter of" the complaint. Fed. R. Civ. P. 13(a)(1)(A). "A compulsory counterclaim is compulsory; unless set forth in the answer to the complaint it is waived." Harbor Ins. Co. v. Cont'l Bank Corp., 922 F.2d 357, 360 (7th Cir. 1990). "[A] permissive counterclaim [i]s one that does not arise out of the same transaction or occurrence that is the subject matter of the complaint." Id.; Fed. R. Civ. P. 13(b). Purdue sued Vintage for trademark infringement and unfair competition; Vintage's counterclaim to rectify the trademark registry is permissive because it doesn't arise out of the same transaction or occurrence as Vintage's alleged improper use of the trademarks. And given the footing on which permissive counterclaims stand as already noted, Purdue can invoke Eleventh Amendment immunity to block the claim.

At bottom, the Eleventh Amendment's applicability to a counterclaim is different than its applicability to removal, and Vintage's argument misses that point. Were Vintage's argument correct, a state could never assert its rights pursuant to removable claims in state court without automatically waiving Eleventh Amendment immunity. And Vintage hasn't provided the court with any persuasive authority to support its argument. Purdue can invoke Eleventh Amendment immunity to prevent Vintage from bringing its counterclaim.

III.   Conclusion

Purdue's motion seeks remand, or alternatively, dismissal of Vintage's counterclaim. Vintage has asked that, if the court doesn't agree with its arguments, that the court dismiss its counterclaim instead of remanding the case.

"The well-established general rule is that jurisdiction is determined at the time of removal, and nothing filed after removal affects jurisdiction." In re Burlington Northern Santa Fe Ry. Co., 606 F.3d 379, 380 (7th Cir. 2010). At the time of removal, this case "fell within the 'original jurisdiction' of the federal courts." Wisconsin Dept. of Corrections v. Schacht, 524 U.S. 381, 391 (1998). "The State's later invocation of the Eleventh Amendment placed the particular claim beyond the power of the federal courts to decide, but it did not destroy removal jurisdiction over the entire case." Id. In this circumstance, the barred claim "does not destroy removal jurisdiction over the remaining claims in the case . . . . A federal court can proceed to hear those other claims . . . ." Id. at 392-393.

Accordingly, the court doesn't remand the case but otherwise GRANTS Purdue's motion and DISMISSES Vintage's counterclaim [Doc. No. 31].

SO ORDERED.

ENTERED: <u>May 25, 2021</u>

<u>　/s/ Robert L. Miller, Jr.　</u>
Judge, United States District Court